United States District Court
Southern District of Texas
**ENTERED**
August 18, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FLORENCIO CRUZ, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00153 |
| | § | |
| ARMANDO CHAPA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS ACTION**

Plaintiff Florencio Cruz, III, is a Texas inmate appearing *pro se* and *in forma pauperis*. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, attempting to raise claims concerning his being served meals that did not follow his medical dietary restrictions while he was an inmate temporarily detained at the Aransas County Detention Center. Plaintiff's case is subject to screening in accordance with the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends Plaintiff's complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because his claims are frivolous and/or failure to state a claim on which relief may be

granted.  The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.       JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned for case management pursuant to 28 U.S.C. § 636.

## II.      PROCEDURAL BACKGROUND

The Court received Plaintiff's original complaint on June 13, 2023.  (D.E. 1).  On June 15, 2023, the Court granted Plaintiff's application to proceed *in forma pauperis*. (D.E. 5).  Plaintiff named the following defendants in his original complaint: (1) Aransas County Texas Jail Administrator Armando Chapa; (2) Aransas County Sheriff Bill Mills; and (3) the Aransas County Detention Center ("ACDC").  On July 11, 2023, Plaintiff appeared telephonically for a *Spears*[2] hearing to allow Plaintiff an opportunity to more fully describe his claims.  During the *Spears* hearing, the undersigned admonished Plaintiff about the screening process and about pleading deficiencies with his complaint.  (D.E. 16, Pages 28-29).  The admonishments given to Plaintiff included but were not limited to the following: many of Plaintiff's claims, and possibly all of them, should be dismissed on screening for failing to state a claim, being frivolous, having an insufficient factual explanation, or for

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  The evidentiary hearing is "in the nature of a motion for more definite statement." *Id.*  at 181-82.  The prisoner's testimony at the hearing is a more elaborate form of response to questionnaires that courts submit to prisoners so that they may set out in greater detail the bases for their claims. *Id.*

other reasons including Plaintiff's treatment not amounting to deliberate indifference, and the lack of injury to Plaintiff.  On July 11, 2023, the undersigned also entered an order identifying Plaintiff's pleading deficiencies and allowing Plaintiff to file an amended complaint. (D.E. 11).  On July 20, 2023, Plaintiff filed a motion to voluntarily dismiss the ACDC and Sheriff Mills.  (D.E. 13).  On July 24, 2023, the undersigned granted Plaintiff's partial motion to dismiss, and the ACDC and Sheriff Mills were dismissed without prejudice.  (D.E. 14).  On August 10, 2023, the Court received Plaintiff's Amended Complaint in which he names Jail Administrator Chapa as the only defendant.  (D.E. 15).

## III.   PLAINTIFF'S ALLEGATIONS

The following allegations are taken from Plaintiff's *Spears* hearing testimony and his Amended Complaint.  (D.E. 15).  Plaintiff is currently an inmate at the TDCJ Willacy Unit in Raymondville, Texas, however, the facts giving rise to this case occurred while Plaintiff was temporarily detained on a parole violator's warrant at the ACDC in Rockport, Texas.  Plaintiff was arrested on a parole violation and arrived at the ACDC on about April 17, 2023.  He was housed at the ACDC for approximately three to four weeks until he was transferred to the custody of the Texas Department of Criminal Justice.  (D.E. 16, page 6). The instant case only concerns the Plaintiff's incarceration at the ACDC.

Plaintiff alleges he follows a medically restricted diet due to his having Ulcerative Colitis.  (D.E. 16, Page 7).  Ulcerative Colitis is a chronic inflammatory bowel condition causing Plaintiff to experience abdominal discomfort and pain, frequent bowel movements, gas, bloating, nausea, constipation and diarrhea. Plaintiff manages his condition by

following a medically restrictive diet and avoiding certain types of food. (D.E. 16, Page 8). Certain types of food aggravate Plaintiff's symptoms, including corn, seeds and nuts. (D.E. 16, page 10).[3] When Plaintiff experiences symptoms of his condition, he avoids exercise and socializing or interacting with others.

Plaintiff alleges he told personnel at the ACDC about his condition but the meals he received in the ACDC did not always comply with his medically restricted diet. Shortly after his arrival, Plaintiff began having stomach problems. (D.E. 16, Page 13). Plaintiff submitted a sick call request and was seen by a doctor at the ACDC. (D.E. 16, Page 14). Plaintiff was examined and had blood drawn for analysis. (D.E. 15, Page 4). Plaintiff received a prescription and other medication to treat his condition the same day. (D.E. 16, Page 10). The doctor also placed Plaintiff on a restrictive diet directing Plaintiff not to eat spicy food or processed meats. (D.E. 16, Pages 14-15).

Plaintiff alleges Defendant Chapa rejected, or refused to follow, the doctor's directive regarding Plaintiff's dietary restrictions. (D.E. 15). A facility nurse reportedly told Plaintiff he was taken off the restricted diet "because of a typo of the – the physician." (D.E. 16, Page 17). The timing of Plaintiff being taken off the restrictive diet is not clear. Therefore, the duration of time during which Plaintiff received a medically appropriate diet is unclear. Nevertheless, Plaintiff was still receiving medication for his condition. (D.E. 16, Page 18). After Plaintiff was removed from the medically restrictive diet, his symptoms

---

[3] When Plaintiff is in TDCJ custody he receives a gluten free diet. (D.E. 16, Page 8).

returned or persisted and Plaintiff was seen by the facility doctor a second time for his condition.  (D.E. 16, Page 18).  The doctor prescribed Plaintiff a second medication which was effective and which he continues to take to this day.  (D.E. 16, Page 18).  The doctor also placed Plaintiff on a bland diet. (D.E. 16, Page 19).  The second appointment with the facility doctor occurred in May 2023, toward the end of Plaintiff's detention at the ACDC.

At some point, after Plaintiff's second appointment with the facility doctor, Plaintiff had an interaction with Jail Administrator Chapa.  Chapa determined Plaintiff had ordered food items from the facility commissary that were processed foods, which were inconsistent or not in accordance with Plaintiff's restrictive diet.  Based on Plaintiff's food purchases from the commissary, Chapa overruled the doctor's order concerning Plaintiff receiving a medially restricted diet.  (D.E. 16, Page 21).  The exact timing of Chapa terminating Plaintiff's special diet the second time is unclear, but Plaintiff believes it was around May 18, 2023, which would have been toward the end of Plaintiff's incarceration at the ACDC.  (D.E. 16, Page 23).

Plaintiff describes his medical condition as permanent, however, he does not allege having suffered a serious or permanent injury resulting from the food served at the ACDC. (D.E. 16, Page 25).  When the undersigned asked Plaintiff to describe his injuries, Plaintiff stated, "But I don't think permanent injury will be the – the right wording for it.  I think more a personal injury, correct . . . I feel the meals that they – he was giving me, it was creating personal problem (sic) for me."  (D.E. 16, Page 25). Plaintiff alleges he feels like

Chapa had a malicious intent against him and was treating Plaintiff unfairly. (D.E. 16, Page 25).

During this approximate three-to-four-week period, Plaintiff had to avoid items of institutional food that violated his dietary restrictions and was often forced to choose between eating food that would aggravate his symptoms and not eating all of the food on his tray. Plaintiff does not allege illness caused by malnutrition. Instead, Plaintiff alleges some of the food items served at the ACDC aggravated the symptoms associated with his Ulcerative Colitis, and as a result, he experienced abdominal discomfort and pain, frequent bowel movements, gas, bloating, nausea, constipation and diarrhea.

## IV.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

A complaint is deficient and is subject to summary dismissal under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly,* 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## V.   DISCUSSION

Plaintiff's complaint is liberally construed to allege that Defendant Chapa violated Plaintiff's right to be free from cruel and unusual punishment when Chapa intervened and terminated the medically restrictive diet the facility doctor prescribed Plaintiff.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.

Deliberate indifference is more than mere negligence. *Id.* at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

"To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it."). *See also Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 305 (5th Cir. 2020). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted). As noted above, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (internal quotations and citation omitted).

In the instant case, Plaintiff's allegations do not amount to deliberate indifference or any Eighth Amendment violation.  Plaintiff was temporarily housed at the ACDC for approximately three to four weeks.  During this time, Plaintiff experienced abdominal discomfort and pain, frequent bowel movements, gas, bloating, nausea, constipation and diarrhea in connection with his Ulcerative Colitis.  Plaintiff's health condition was not ignored.  He was seen and treated by a medical doctor on two occasions.  The facility doctor prescribed Plaintiff medication and placed Plaintiff on a restricted diet after his first appointment.  Plaintiff alleges at some point he was not provided meals in accordance with the restricted diet.  Plaintiff does not know why the prescribed diet was not followed, but he was told it was due to a "typo" or some other problem with the paperwork.  Plaintiff then requested a follow up appointment with the doctor, which he received.  At the second medical appointment, the facility doctor added another prescription and placed Plaintiff on a restricted diet again.

Plaintiff testified at the *Spears* hearing that after the doctor prescribed him a restricted diet on the second occasion, Defendant Chapa interfered and overruled the doctor's orders. For purposes of screening, Plaintiff's allegations are accepted as true.  A correctional supervisor disregarding or overruling the course of treatment of a medical practitioner in many circumstances would support an inmate's deliberate indifference claim proceeding beyond the screening stage or frivolity review.  However, even accepting Defendant Chapa's interference as true, along with all of Plaintiff's allegations, Plaintiff

has failed to state a claim. Defendant Chapa's alleged interference with Plaintiff's prescribed diet occurred at the end of Plaintiff's short period of custody at the ACDC. Plaintiff was moved to a TDCJ facility in mid-May 2023 and he is now receiving meals that are in accordance with his dietary needs. Had Plaintiff been incarcerated at the ACDC for a longer time without better accommodation of his dietary needs, the prolonged neglect of his dietary condition may have presented a viable Eighth Amendment claim. While Defendant Chapa's conduct in connection with Plaintiff's dietary restrictions may amount to negligence, Plaintiff's allegations do not amount to a claim of deliberate indifference.

To the extent Plaintiff's complaint can be construed as a claim that he was provided inadequate nutrition while an inmate at the ACDC, he has also failed to state a claim. Prisoners are guaranteed a nutritionally adequate diet. *See Wilson v. Seiter,* 501 U.S. 294, 303 (1991). However, temporary withholding of food does not *per se* constitute an objectively serious deprivation in violation of the Constitution. *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999). The circumstances, nature, and duration of a deprivation of life's necessities must be considered in determining whether a constitutional violation has occurred. "In general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Deapain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) (quoting

11 / 15

*Johnson v. Lewis,* 217 F.3d 726, 732 (9th Cir. 1999)); *see also Whitnack v. Douglas Cty.,* 16 F.3d 954, 958 (8th Cir. 1994).

The undersigned liberally construes Plaintiff's pleading and *Spears* hearing testimony to allege Plaintiff was frequently hungry and was forced to choose between remaining hungry or eating institutional food that would irritate his Ulcerative Colitis condition. However, Plaintiff does not allege all of the food served to him at the ACDC caused adverse symptoms related to his Ulcerative Colitis. Plaintiff received regular meals. Certainly, some percentage of the food items he received were in accordance with his restricted diet. The amount, number, or percentage of food items served to Plaintiff which irritated his condition is not alleged clearly by Plaintiff. Plaintiff has not alleged any facts to indicate he was malnourished or received an insufficient caloric intake. Plaintiff has not alleged the food he did receive which did not irritate his Ulcerative Colitis was nutritionally inadequate.

The undersigned cautioned Plaintiff orally and in writing that he had not alleged sufficient facts to raise a claim and Plaintiff was given an opportunity to amend his complaint. Nevertheless, it is apparent Plaintiff was fed and Plaintiff knew which food to avoid. Plaintiff admitted in the *Spears* hearing that he occasionally ordered food items from the facility commissary that did not comply with his medically restrictive diet. The undersigned does not find this fact to mean the facility was then free to ignore Plaintiff's medical condition but rather takes it as an indication that not every food item which fell outside his restrictive diet presented a serious risk of harm to Plaintiff. Additionally,

Plaintiff's voluntary noncompliance with his dietary restrictions and his purchases of food items from the facility commissary is an indication that Plaintiff exercised some control in managing and supplementing his diet while an inmate at the ACDC.

*Green v. Ferrell,* 801 F.2d 765, 770-71 (5th Cir. 1986) is instructive.  In *Green*, prisoner-plaintiffs brought a class action lawsuit complaining about the conditions of confinement in a Mississippi county jail, including that the Adams County Jail served only two meals a day.  The case was tried before a magistrate judge and he ordered injunctive relief *inter alia* on the food claim stating: "The jail must provide three nutritionally adequate meals per day.  The third meal may be in the form of a mid-day or bedtime light meal, so long as the meal meets the recognized daily requirements both nutritionally and calorically."  *Id.* at 770.  On appeal, the Fifth Circuit reversed the portion of the judgment requiring a third meal.  *Id.* at 771.  The Fifth Circuit noted that none of the prisoner-plaintiffs had alleged any medical problems caused by being served only two meals, and the mere fact that experts might recommend three meals a day does "not create constitutional standards under the Eighth Amendment."  *Id.*

Finally, Plaintiff alleges no serious injury occurring while he was an inmate at the ACDC.  The undersigned does not minimize the serious nature of Plaintiff's condition or the discomfort he endured.  However, the symptoms Plaintiff encountered (frequent bowel movements, gas, bloating, nausea, constipation and diarrhea) during his temporary period of confinement at the ACDC do not amount to the type of serious health conditions qualifying as an Eighth Amendment violation.  Without some injury, Plaintiff cannot

prevail on his Eighth Amendment claim for damages against the named Defendants. *See Hudson v. McMillian,* 503 U.S. 1, 8-10 (1992) (to state an Eighth Amendment conditions of confinement claim, the harm suffered from the alleged violation must be more than *de minimis*).   Again, had Plaintiff been incarcerated at the ACDC for a longer period, the undersigned would be more inclined to order service on the defendant.   However, the facts before the Court are such that dismissal on screening is appropriate.

## VI.   RECOMMENDATION

For the reasons stated above, the undersigned respectfully recommends that this case be dismissed with prejudice as frivolous and for failure to state a claim pursuant to 28 U.S.C. §§1915(e)(2) and 1915A(b)(1).   It is further respectfully recommended that final judgment of dismissal be entered in this action.

Respectfully submitted on August 18, 2023.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).